# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ABC CAPITAL INVESTMENTS, LLC, AND :
ALPHA CAPITAL INVESTMENTS, LLC, :
                                       :
      Plaintiffs, :
                                       : CIVIL ACTION
   v. :
                                       : NO. 16-CV-4943
CNA FINANCIAL CORPORATION, et al., :
                                       :
     Defendants. :

## MEMORANDUM

Joyner, J.                                                                           June 20, 2017

     Before the court are four motions to dismiss filed by each of the four remaining defendants in this case (Doc. Nos. 20, 25, 30, and 32), Plaintiffs' Consolidated Reply to those Motions (Doc. No. 33), and various replies, sur-replies, and supplemental briefing (Doc. Nos. 35, 36, 38, 45, 46, and 47). For the reasons below, the City of Philadelphia's Motion to Dismiss is DENIED, and the other three Motions are GRANTED. An appropriate Order follows.

## I. Factual and Procedural Background[1]

     On December 1, 2015, Alpha Capital Investments, LLC ("Alpha") purchased a property located at 714 North 36th Street in Philadelphia ("the Property"). (Amended Complaint ("AC"),

---

[1] Unless otherwise noted, all factual background is taken from the allegations in Plaintiffs' original and/or amended complaints. We presume the truth of the Plaintiffs' allegations for purposes of Defendants' Motions to Dismiss.

Doc. No. 17, at ¶¶ 9-10). At some point in time not specified in the Amended Complaint, Alpha entered into a contract with ABC Capital Investments, LLC ("ABC") to manage the Property, with an aim toward renovating it and turning it into a rental property. Id. at ¶ 10. Although ABC is itself a plaintiff in this action (as is Alpha), the Amended Complaint alleges that "ABC was negligent with regard to its duties to Alpha, by not insuring that the proper construction permits, and other insurance had been obtained by the hired contractors." Id. at ¶ 11.[2]

In any event, Plaintiffs allege that they hired Beneficial Insurance Services, LLC ("BIS") to serve as their insurance agent. Id. at ¶ 16. In this capacity, BIS was responsible for ensuring that the Property was "fully insured from all perils and risks of all kinds." Id. BIS in turn directed Plaintiffs to contract with Transportation Insurance Company ("TIS") and Continental Casualty Company ("CCC") to procure insurance for the Property covering "all risks." Id. at ¶ 17. Plaintiffs allege that an insurance policy between ABC, TIS, and CCC was enacted on

---

[2] According to the Amended Complaint, ABC and Alpha are both limited liability corporations duly organized in accordance with the laws of the Commonwealth of Pennsylvania, and they are both located at 1218 North Marshall Street in Philadelphia. (AC at ¶¶ 1-2). The precise nature of their relationship is not clear from the facts plead. Plaintiffs also allege that Alpha "has asserted, or is in the process of asserting, negligence claims against ABC for their negligence and breach of their duties." Id. at ¶ 25. And, indeed, Plaintiff Alpha has since filed a separate lawsuit in the Philadelphia County Court of Common Pleas against Plaintiff ABC, at docket number 161100937. (Doc. No. 17-5; Doc. No. 33-1).

2

July 10, 2015.  Id. at ¶ 18; id. at Exhibit ("Ex.") A (Doc. No. 17-2).

At some point after the December 1, 2015 purchase date, the City of Philadelphia ("the City") inspected the Property and determined that a retaining wall was in danger of collapsing. Id. at ¶ 12.  ABC responded by hiring a contractor to reinforce the wall, apparently bracing it as directed by the City's inspector.  Id. at ¶¶ 12-13.  ABC and Alpha also procured a sworn affidavit from William Scott Cooper, a professional engineer, dated February 4, 2016, in which Mr. Cooper stated that he personally inspected the Property and found that it "IS NOT in danger of collapse."  Id. at ¶ 14; id. at Ex. B (Doc. No. 17-3). The City was evidently not satisfied.  Plaintiffs allege that the City conducted an emergency hearing at which it refused to allow the professional engineer or any other person to speak.  Id. at ¶ 14.  It then authorized the demolition of Alpha's property.  Id. Once the property was destroyed, the City sent Alpha a bill for $53,000, the cost of demolition.  Id.

In the wake of that demolition, Plaintiffs ABC and Alpha submitted an insurance claim "against Plaintiff ABC" to their insurers, TIC and CCC.  Id. at ¶ 20.  Plaintiffs allege that both TIC and CCC have "refused to cover and compensate properly for the damages of Plaintiffs, have ignored the provable facts and policy language and issued a Reservation of Rights letter . . .

." Id. at ¶ 21; id. at Ex. D (Doc. No. 17-4).

On August 19, 2016, Alpha and ABC filed a lawsuit in the Philadelphia County Court of Common Pleas naming the City, BIS, CCC, and CNA Financial Corporation ("CNA") as defendants. (See Doc. No. 1). Plaintiffs asserted various state-law claims against BIS, CCC, and CNA, including breach of contract, unjust enrichment, and negligence. It asserted its sole federal claim against the City, which Plaintiffs say violated Plaintiffs' constitutional right to due process. The City promptly removed this case to federal court on the basis of federal-question jurisdiction. After CNA and CCC filed motions to dismiss, Plaintiffs filed an amended complaint substituting TIS as a defendant in place of CNA. The City, BIS, CCC, and TIS then separately moved to dismiss Plaintiffs' amended complaint for failure to state a claim on which relief can be granted. (Doc. Nos. 20, 25, 30, and 32). Those motions are now fully briefed and the matter is ripe for disposition.

**II. Standard of Review**

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion, a district court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Krantz v. Prudential Invs. Fund Mgmt. LLC, 305 F.3d 140, 142 (3d Cir. 2002)

4

(quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).  While a court generally cannot consider matters outside the pleadings, "a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) (internal quotation marks and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice.  Id. (citation omitted).  Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation.  Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 176 (3d Cir. 2010) (citing Twombly, 550 U.S. at 555).  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal

5

conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986).

**III.  Due Process Claim Against City of Philadelphia**

Plaintiffs allege that the City violated Plaintiffs' right to due process and other constitutional rights by demolishing Plaintiffs' property without first adhering to proper procedural steps.  Plaintiffs rely on 42 U.S.C. § 1983, which authorizes private parties to enforce their federal constitutional rights against defendants who acted under color of state law.  A municipality, like Philadelphia here, can be liable under § 1983, but not on the basis of *respondeat superior*.  Rather, a municipality can be liable only when it acts on "'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by' the officers of that municipality." <u>Langford v. City of Atl. City</u>, 235 F.3d 845, 847 (3d Cir. 2000) (quoting <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 690 (1978)).

The City argues that we should dismiss Plaintiffs' claim because the Amended Complaint fails to allege facts regarding a municipal policy or custom, and because it fails to allege prior instances of misconduct.  But Plaintiff need not allege a consistent pattern of behavior when the Amended Complaint clearly alleges that the City acted in its official capacity, and not through the behavior of a possibly rogue officer.  As the Supreme

6

Court has made clear, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). The act Plaintiffs complain of was allegedly the product of an emergency hearing conducted by the City. It is possible that the procedures employed at, before, and after that hearing satisfied Plaintiffs' due process rights, but that question is for another day. A fair reading of Plaintiffs' complaint demonstrates that the decision to demolish the property was made by the City's authorized decision makers. That is enough. See id. at 481 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983."). We hold that Plaintiffs have stated a cognizable due process claim against the City, and so the City's motion will be denied.

**IV. State-Law Claims Against CCC**

Plaintiffs assert three claims against Defendant CCC: (1) breach of contract, (2) unjust enrichment, and (3) bad faith. CCC advances distinct arguments as to why neither Plaintiff Alpha nor Plaintiff ABC has stated any cognizable claim.

**(1) Alpha's Claims**

CCC argues that Alpha's claims all fail because Alpha is not insured by CCC, and Pennsylvania law does not permit "direct actions" against insurers. (Doc. No. 20). Plaintiffs do not dispute CCC's characterization of the law; they respond only that Alpha was issued a Certificate of Insurance, which purportedly brings Alpha within the scope of CCC's insurance policy. (Doc. No. 33-1, at p. 14; Doc. No. 33-3). But Plaintiffs' averment that Alpha is insured by CCC is belied by the allegations in the Amended Complaint and the Certificate of Insurance included with Plaintiffs' opposition papers. As CCC points out in its reply, Alpha's "Certificate of Insurance" references insurance policies purportedly issued by "Great American E&S Insurance Company" and nowhere makes any reference to CCC. (Doc. No. 35; Doc. No. 33-3). Plaintiffs' argument is also undermined by their own representations to the Court. See, e.g., Pl. Opp. (Doc. No. 33-1), at p. 9 ("TIC and CCC acted in bad faith *toward its insured and Plaintiff Alpha*") (emphasis added). Accordingly, the Court holds that Plaintiffs' amended complaint fails to allege facts that support any of Alpha's claims against CCC.

**(2) ABC's Claims**

CCC next argues that ABC's claims fail because any legal action is premature under the "No Action" provision of ABC's insurance policy. In relevant part, that insurance policy

8

states:

> **Legal Action Against Us**
>
> No legal action shall be brought against us unless you have fully complied with all the terms of this policy and the amount of your obligation to pay has been finally determined either by:
>
> a. Judgment against you after actual trial; or
>
> b. Written agreement between us, you and the claimant.

(Doc. No. 20-5).[3] Plaintiffs respond that CCC has a duty to defend ABC, and that this duty supersedes the "No Action" clause in ABC's insurance policy. And, indeed, insurers are required under Pennsylvania law to defend their insureds against claims for which the insurer has agreed to provide coverage. See Birth Ctr. v. St. Paul Companies, Inc., 567 Pa. 386, 411 (2001) ("It is hornbook law that a breach of either the duty to indemnify or the duty to defend constitutes a breach of a promise set forth in the liability insurance contract and gives rise to a cause of action *ex contractu*[.]"). Because the amended complaint clearly alleges that CCC has not complied with their duty to defend, Plaintiffs maintain that their claims against CCC are viable. We disagree.

At the time the Amended Complaint was filed, ABC's claims against CCC were not ripe, because CCC had not yet determined whether to cover ABC's claims or otherwise defend ABC against any

---

[3] Because ABC's insurance policy is integral to and explicitly relied upon in the Plaintiffs' Amended Complaint, it is appropriately before the Court even on a motion to dismiss. See Burlington Coat Factory, 114 F.3d at 1426.

9

litigation, as is made clear by the "Reservation of Rights" letter from CCC to ABC which Plaintiffs attached to the Amended Complaint.[4] In relevant part, CCC stated:

> As stated above, we will investigate this claim under a reservation of rights. However, at this early stage of the claim certain factual information may not yet be determined which could potentially affect the coverage available. Additionally, please send us a copy of any Complaint that you may receive in the future. We therefore reserve our right to modify our position. We reserve the right to seek reimbursement for any and all sums paid for indemnity or defense costs to the extent it is determined we had no obligation to provide coverage for this claim.

AC, Ex. D (Doc. No. 17-4), at p. 5. And, in fact, CCC has since assigned defense counsel to represent Plaintiff ABC's interests in the state court litigation filed against it by Plaintiff Alpha. (Doc. No. 45, Ex. 1). We thus hold that ABC's claims against CCC are not ripe, and all of Plaintiffs' claims against CCC are properly dismissed at this time.[5]

**V. State-Law Claims Against TIC**

Plaintiffs assert the same claims against Defendant TIC as

---

[4] "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

[5] CCC asks that we go further and declare that CCC has no obligation to defend ABC in the state court action, on account of certain acts taken by ABC's counsel in state court that CCC alleges amount to a breach of contract. (Doc. Nos. 45, 47). CCC is in effect asking us for a declaratory judgment of its rights under the insurance policy. Such a declaratory judgment claim is not properly before the Court, however, and we thus decline to make any judgments regarding either CCC's obligation to defend ABC in the state court action, or the conduct of ABC or its attorney in prosecuting that action.

10

those asserted against CCC:  (1) breach of contract, (2) unjust enrichment, and (3) bad faith.  Like CCC, TIC advances distinct arguments as to why neither Plaintiff Alpha nor Plaintiff ABC has stated any cognizable claim.

**(1) Alpha's Claims**

Alpha's claims against TIC fail for the same reasons discussed above with regard to its claims against CCC.  In particular, Plaintiffs' argument that Alpha is insured by TIC are unsupported by the allegations in the Amended Complaint and the "Certificate of Insurance," (Doc. No. 33-3), which Plaintiffs erroneously rely upon to support their argument that Alpha is insured by TIC.

**(2) ABC's Claims**

TIC argues that ABC's claims for coverage are excluded under the ABC's insurance policy because, on Plaintiffs' own account, ABC was acting as Alpha's property manager when the property damage occurred.  In relevant part, an endorsement to that insurance policy states:

> **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**
>
> **LIMITATION OF COVERAGE – REAL ESTATE SERVICES WITH PROPERTY MANAGEMENT**
>
> This endorsement modifies insurance provided under the following:
>
> BUSINESSOWNERS LIABILITY COVERAGE FORM

> A. <u>This insurance does not apply to "property damage" to property you operate or manage</u> or as to which you act as agent for the collection of rents or in any other supervisory capacity.

(Doc. No. 30-5) (emphasis in original).[6] Plaintiffs advance several arguments in an attempt to avoid this contractual bar. They respond first that TIC's argument for dismissal relies on an "'exclusion' deep within the contract." (Doc. No. 33-1, at 15). Next, they contend that TIC's argument turns on a factual issue regarding whether ABC was acting as Alpha's property manager. Id. Finally, they argue that the insurance arrangement between Plaintiffs and TIC "were known, accepted, and the fundamental basis for all insurance policies issued," including the Certificate of Insurance discussed above. Id. These arguments are not persuasive.

Plaintiffs' assertion that the exclusion is "deep within the contract" is irrelevant where Plaintiffs have not argued that the insurance policy is a contract of adhesion or that the policy exclusion is unconscionable. Indeed, an "insurance policy's language that is clear and unambiguous should be given its plain and ordinary meaning, unless the parties indicate that another meaning was intended," Auto. Ins. Co. of Hartford, Conn. v. Curran, 994 F. Supp. 324, 329 (E.D. Pa. 1998), and Plaintiffs do

---

[6] As with CCC, ABC's insurance policy with TIC is likewise integral to and explicitly relied upon in the Plaintiffs' Amended Complaint. It too is appropriately before the Court even on a motion to dismiss. See Burlington Coat Factory, 114 F.3d at 1426.

12

not argue that the policy exclusion is ambiguous or that the parties intended another meaning for that exclusion. Plaintiffs instead try to manufacture a factual issue, but that is foreclosed by the allegations in their own complaint, which clearly state that ABC was Alpha's property manager. See AC at ¶ 10 ("Plaintiff ABC had a legal duty to Alpha, as ABC's customer and client, to act as property manager"). Plaintiffs' averment that an alternative insurance arrangement between the parties was known and accepted is unsupported by the allegations in the Amended Complaint and those documents properly before the Court that are integral to and relied on in the Amended Complaint; Plaintiffs' conclusory argument to the contrary cannot save ABC's claims from dismissal. We will accordingly dismiss all claims against TIC.

**VI. State-Law Claims Against BIS**

Plaintiffs assert three claims against Defendant BIS: (1) breach of contract, (2) breach of fiduciary duty, and (3) negligence. BIS argues that Plaintiffs' claims fail as a matter of law because Plaintiffs have not yet suffered any damages. BIS separately argues that Alpha's claims should be dismissed for the independent reason that BIS owed no duty to Alpha.

**(1) Alpha's Claims**

We begin again by analyzing whether Plaintiffs have stated any cognizable claims against BIS on behalf of Alpha. BIS argues

13

that Plaintiffs have not, because (a) Alpha is not a named insured under either the CCC or TIC policy, (b) Alpha and BIS are not parties to any contract, and (c) ABC, and not Alpha, was the customer to whom BIS owed tort duties as the broker to procure requested coverage. We have already held that Alpha is not a named insured under either the CCC or TIC policy, and dismissed Alpha's claims against those defendants on that basis.

Plaintiffs respond that the Amended Complaint alleges that BIS was hired by both ABC and Alpha to serve as their insurance agent. See AC at ¶ 16 ("Defendant Beneficial was hired by Plaintiff ABC, and Alpha, to serve as their skilled insurance agent, and was responsible for ensuring . . . that ABC and Alpha were both properly insured for any issues with the property"). Neither Plaintiffs nor BIS has presented the Court with a copy of any contract between Beneficial and the Plaintiffs, and so Plaintiffs' allegations about the contractual relationship between the parties are entitled to the ordinary presumption of truth afforded on a motion to dismiss. At this stage of the litigation, this Court finds no basis for dismissing Alpha's claims against BIS on the ground that BIS owed no duties in contract or tort to Alpha.

**(2) Alpha and ABC's Claims: Damages**

BIS also argues that Alpha's claims—and ABC's, too—should be dismissed for the independent reason that all of their claims

14

require a showing of damages, which are premature because CCC may yet provide complete relief to ABC on its insurance claim. Plaintiffs do not dispute that damages are an essential element of each of its claims against BIS. They instead appear to rest on the same arguments they made in support of their claims against CCC. (Doc. No. 33). For the same reasons that Plaintiffs' claims against CCC are not yet ripe, their claims against Beneficial are likewise premature. Accordingly, Plaintiffs' claims against BIS are appropriately dismissed at this time.

## VII. Conclusion

For the foregoing reasons, the City of Philadelphia's Motion is DENIED, and CCC's Motion, TIC's Motion, and BIS's Motion are GRANTED. Plaintiffs' claims against CCC, TIC, and BIS will be dismissed without prejudice. An appropriate Order follows.